204 P.3d 407

**STATE of Arizona, Appellee,**

v.

**Danny Ray HARDESTY, Appellant.**

**No. 1 CA–CR 06–0966.**

Court of Appeals of Arizona, Division 1, Department E.

July 31, 2008.

Review Granted Jan. 6, 2009.

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph L. Parkhurst, Assistant Attorney General, Tucson, Attorneys for Appellee.

DeRienzo & Williams P.L.L.C. by Daniel J. DeRienzo, Prescott Valley, Attorneys for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Danny Ray Hardesty ("Defendant") appeals his convictions and sentences for possession of marijuana and possession of drug paraphernalia. Defendant contends that the trial court erred in refusing to recognize his religious practice defense based on the free exercise clauses of the United States and Arizona Constitutions and the Arizona statutory provisions related to such protections. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On April 15, 2005, a law enforcement officer stopped Defendant after observing a burned out headlight on his van. Upon approaching the driver's door, the officer smelled burnt marijuana emanating from inside the van. When questioned about the smell, Defendant initially denied having any marijuana but then admitted that he had been smoking a "joint," which he had thrown out the window. The officer found the joint, and Defendant identified it as his. The officer also seized a baggy of marijuana from a backpack inside the van. Both the joint and the baggy contained usable amounts of marijuana.

¶ 3 Defendant was charged with possession of marijuana and possession of drug paraphernalia, each a class 6 felony. Ariz.Rev. Stat. ("A.R.S.") §§ 13–3405(A)(1) (2001) and –3415 (2001). Before trial, he moved to dismiss the charges on the ground that the use of marijuana was part of the practice of his religion. The State opposed the motion, arguing that the Rules of Criminal Procedure do not permit one to raise a fact-based defense prior to trial. The State also asserted that the subject drug statutes did not violate Defendant's right to the free exercise of religion because they were laws of general applicability.

¶ 4 At a hearing on the motion, Defendant conceded that the State had a compelling governmental interest to regulate marijuana but argued that it did not use the least restrictive means of furthering that interest.[1] Defendant testified that he has been a practicing member of the Church of Cognizance since 1993. Defendant presented testimony from Michael Senger, an officer or "Cogniscenti" of the Church, who explained that the Church was founded in 1991 and is based on Neo–Zoroastrian tenets. According to Senger, marijuana or "Haoma" is the main religious sacrament of the Church and its use provides a connection to the divine mind and spiritual enlightenment.[2] Following the hearing, the trial court denied Defendant's motion because it was not authorized by the Rules of Criminal Procedure.

¶ 5 At the final pretrial conference, the trial court granted the State's motion in limine to preclude the admission of evidence

---

1. On appeal, Defendant argues that the State did not have a compelling interest in regulating his use of marijuana. We agree that his concession of a compelling state interest was solely for purposes of his motion to dismiss, and thus we consider whether the State had such an interest.

2. The State did not contest whether the Church of Cognizance constituted a "religion" in the context of the free exercise clause.

related to Defendant's free exercise of religion defense based on its finding that the defense was not cognizable under Arizona law. Defendant then waived his right to a jury trial, and the matter was tried before the trial court, which found Defendant guilty as charged.[3]

¶ 6 At sentencing, the court placed Defendant on probation for eighteen months. The court stated, without ruling on whether the Church of Cognizance constituted a "religion" for purposes of the free exercise clause, that Defendant's claim for a religious use of marijuana was not made "in bad faith" and that it was something that Defendant was "sincerely professing at the time."

¶ 7 Defendant filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(1) (2001).

## DISCUSSION

¶ 8 Defendant argues that the Arizona statutes prohibiting the possession of marijuana and drug paraphernalia violate his federal and state constitutional rights, as well as state statutory rights to religious freedom. The Free Exercise Clause of the First Amendment provides: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof...." This provision is applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

¶ 9 The free exercise of religion encompasses two concepts: "the right to believe and profess whatever religious doctrine one desires" and the right to perform or abstain from physical acts for religious reasons. *Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), *superseded by statute*, Religious Freedom Restoration Act of 1993 ("RFRA"), Pub.L. No. 103–141, 107 Stat. 1488. "The first is absolute but, in the nature of things, the second cannot be."

*Cantwell*, 310 U.S. at 303–04, 60 S.Ct. 900. Thus, the government cannot regulate the right to believe and profess whatever religious doctrine one desires, nor may the government penalize or discriminate against individuals or groups because of their religious views. *See Sherbert v. Verner*, 374 U.S. 398, 402, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). But, the right to engage in actions or conduct prompted by religious beliefs or principles "is not totally free of legislative restrictions." *Id.* at 403, 83 S.Ct. 1790 (quoting *Braunfeld v. Brown*, 366 U.S. 599, 603, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)). "Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection." *Cantwell*, 310 U.S. at 304, 60 S.Ct. 900 (footnote omitted).

¶ 10 Here, the charges against Defendant involve the use and possession of marijuana and drug paraphernalia in violation of A.R.S. §§ 13–3405(A)(1) and –3415(A). His free exercise claim therefore concerns conduct, not belief, and accordingly may be subject to governmental regulation. *See id.*

### Burden Upon a Sincere Religious Belief

¶ 11 Individuals who assert an unconstitutional governmental infringement on their right to religious freedom must show that a governmental regulation burdens a sincere conviction that "is rooted in religious belief," *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 220, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), "rather than personal or secular considerations." *In re Marriage of Gove*, 117 Ariz. 324, 327, 572 P.2d 458, 461 (App.1977). Whether a statute presents an unconstitutional burden on religious practice is an issue we review *de novo*. *See Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997) (reviewing *de novo* statute's constitutionality, presuming law to be constitutional, and giving challenger burden to establish otherwise).

¶ 12 In a case before the District Court of New Mexico, members of the same Church of Cognizance argued that the pending mari-

---

**3.** Although not explicitly stated, underpinning the court's ruling was a finding that the criminal statutes did not violate Defendant's constitutional rights. Therefore, we address this issue on appeal.

juana charges constituted a substantial burden on exercise of their religion because use of marijuana was a means of worship. *United States v. Quaintance*, 471 F.Supp.2d 1153, 1155 (D.N.M.2006). To determine whether the Church of Cognizance was a "religion," the court appropriately examined the church's "(1) ultimate ideas, (2) metaphysical beliefs, (3) moral or ethical system, (4) comprehensiveness of beliefs, and (5) accoutrements of religion." *Id.* at 1165. After considering these factors, it held that the defendants failed to demonstrate that their beliefs were "religious." *Id.* at 1156–70. The court also found, based on the evidence presented, that the defendants did not sincerely hold their beliefs. *Id.* at 1171–74. Accordingly, the court denied the defendants' motion to dismiss the indictment. *Id.* at 1174.

¶ 13 Here, the State failed to challenge the sincerity of Defendant's religious beliefs, and the trial court did not rule on the issue. Notwithstanding, during sentencing the court off-handedly remarked that it believed Defendant's claim that use of marijuana was a religious practice was sincere and not made in bad faith.

¶ 14 On appeal, the State concedes that Defendant's beliefs are sincere and that the Church of Cognizance is a "religion" within the free exercise clauses of the federal and state constitutions. Accordingly, for purposes of this appeal, we accept that Defendant has made a sufficient showing that his use of marijuana is a sincere religious practice and that he therefore may assert a free exercise of religion claim. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 439 (2d Cir.1981) (considering person's beliefs that were "arguably religious" as "religious" for purpose of constitutional analysis).

### Federal Free Exercise of Religion Claim

¶ 15 Prior to 1990, a government was required to justify the imposition of a substantial burden on a religious practice with a compelling state interest. *See, e.g., Sherbert*, 374 U.S. at 403, 83 S.Ct. 1790; *Yoder*, 406 U.S. at 214, 92 S.Ct. 1526. When applying this standard, courts considered: 1) whether the law interfered with the free exercise of a sincere religious belief; 2) whether the law was "essential to accomplish an overriding governmental" objective; and 3) whether accommodating the religious conduct would "unduly interfere with fulfillment of the governmental interest."[4] *United States v. Lee*, 455 U.S. 252, 256–59, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).

¶ 16 For example, the United States Supreme Court in *Yoder* addressed whether the state's compulsory school attendance laws violated the First Amendment rights of members of the Amish religion. 406 U.S. at 207, 92 S.Ct. 1526. There, Amish parents refused to send their children to school after the eighth grade. *Id.* The state asserted that the compulsory school attendance laws, which required children to attend school until they turned sixteen, were constitutional because the state had an overriding interest in a compulsory education system, which "prepare[d] citizens to participate effectively" in the political system and to be self-sufficient members of society. *Id.* at 221, 92 S.Ct. 1526. Although the state proffered no evidence to support the assertion, the Supreme Court accepted the general proposition. *Id.* The Court, however, held that denying the Amish a religious exemption would do little to further the state's interest because the Amish had a long-established informal vocational education program and sought only to remove their children from schooling two years early. *Id.* at 222, 92 S.Ct. 1526. Thus, because the state failed to "show with more particularity how its admittedly strong inter-

---

4. When addressing the third prong of this analysis, the Supreme Court also analyzed whether the state used the "least restrictive means of achieving some compelling state interest." *See Thomas v. Review Bd. of Indiana Employmt. Sec. Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Although the language differs, courts have relied on cases using the "undu-

ly interfere" language to determine whether the State has satisfied the least restrictive means test. *See, e.g., Barlow v. Blackburn*, 165 Ariz. 351, 358, 798 P.2d 1360, 1367 (App.1990); *see also Washington v. Balzer*, 91 Wash.App. 44, 954 P.2d 931, 941 (1998). Thus, we conclude that the application of these two standards is the same.

est in compulsory education would be adversely affected by granting an exemption to the Amish," the Court approved the Amish's free exercise claim and held that they were exempt from the state's compulsory education requirement. *Id.* at 236, 92 S.Ct. 1526.

¶ 17 In *Sherbert*, the United States Supreme Court considered whether a South Carolina statute violated the appellant's First Amendment rights by disqualifying her from receiving unemployment benefits after she refused to work on Saturday, which was her religion's Sabbath Day. 374 U.S. at 399–400, 83 S.Ct. 1790. The government appellees asserted a compelling governmental interest in preventing "the filing of fraudulent claims by [those] feigning religious objections," which would deplete government funds and interfere with employers' efforts to schedule Saturday work. *Id.* at 407, 83 S.Ct. 1790. Although the appellees had not made this argument to the state supreme court, the Court held that, even if they had done so, "it would plainly be incumbent upon the appellees to demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights." *Id.* Because the appellees did not meet this burden, the Court upheld the appellant's claim to a free exercise of religion exemption. *Id.* at 410, 83 S.Ct. 1790.

¶ 18 However, in 1990, the United States Supreme Court retreated from the *Yoder* and *Sherbert* test. In *Smith*, the Court held that the First Amendment does not prohibit governments from burdening religious practices through neutral, generally applicable laws. 494 U.S. at 885, 110 S.Ct. 1595. *Smith* concluded that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* at 879, 110 S.Ct. 1595 (quoting *United States v. Lee*, 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982)).

¶ 19 In response to *Smith*, Congress enacted the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb–1 to –4. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 423–24, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)(recognizing congressional response to *Smith* ). RFRA provides in part: "Government may substantially burden a person's exercise of religion only if . . . [it] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.". 42 U.S.C. § 2000bb–1(b).[5]

¶ 20 Although Congress intended that RFRA apply to states as well as the federal government, the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507, 532–36, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), held that the application of RFRA to the states was beyond Congress' legislative authority. It reached that conclusion on grounds of the separation of powers and federalism. *Id.* at 536, 117 S.Ct. 2157 ("RFRA contradicts vital principles necessary to maintain separation of powers and the federal balance."). Thus, neither RFRA nor case law based upon its provisions is controlling on this court, and we examine Defendant's First Amendment argument in the light of constitutional precedent only, as articulated by *Smith* and its progeny.

¶ 21 In support of his First Amendment argument, Defendant cites two recent United State Supreme Court cases. We find both distinguishable.

¶ 22 First, Defendant relies on *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), to argue for the application of strict scrutiny review to laws that burden religious practices. There, the Supreme Court applied strict scrutiny only because it found that the city ordinance at issue, which prohibited animal sacrifices, embodied a thinly veiled attempt to prohibit a specific practice of a particular religion and therefore was not a neutral law of general applicability. *Id.* at 545–46, 113 S.Ct. 2217. Unlike that case,

---

5. In effect, RFRA reinstated the compelling state interest test used in *Yoder* and *Sherbert* for all neutral, generally applicable laws that burden a person's ability to freely practice religion. *Gonzales*, 546 U.S. at 424, 126 S.Ct. 1211.

however, the statutes here do not even arguably target any specific religious practice; therefore, strict scrutiny is not appropriate.

¶ 23 Defendant next relies on *Gonzales*, 546 U.S. at 423, 126 S.Ct. 1211, in which the Supreme Court interpreted RFRA in a challenge to a federal ban on the importation of a plant that contained dimethyltryptamine ("DMT"), a substance listed in Schedule I of the Controlled Substance Act. The plant was needed for making a sacramental tea. *Id.* Because the Court's ultimate decision was controlled by RFRA, and not the First Amendment, it has no application here. *See supra* ¶ 19.

¶ 24 Here, following *Smith* and its progeny, we hold that the Arizona marijuana laws are neutral laws of general applicability. Neither the language nor circumstances surrounding the enactment of A.R.S. §§ 13–3405(A)(1) and –3415(A) indicate that a purpose of these statutes is to infringe upon or otherwise restrict religious practices. Accordingly, the Free Exercise Clause of the First Amendment does not afford Defendant an exemption from these laws, even if they have the incidental effect of burdening his religious practices. *Smith*, 494 U.S. at 874, 890, 110 S.Ct. 1595; *see also Church of the Lukumi Babalu Aye*, 508 U.S. at 531, 113 S.Ct. 2217 (acknowledging "general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice").[6]

### State Free Exercise of Religion Claim

¶ 25 In the wake of *Smith* and *Flores*, the Arizona Legislature enacted the Free Exercise of Religion Act ("FERA"), A.R.S. §§ 41–1493 to –1493.02. Legislative hearings reveal an intent to require that review of free exercise claims brought under FERA be conducted pursuant to the *Yoder* and *Sherbert* test. *See* Senate Fact Sheet, S.B. 1391 (Feb. 5, 1999) ("The compelling interest test, as set forth in the federal cases of [*Yoder*] and

[*Sherbert*], is a workable test for striking sensible balances between religious liberty and competing governmental interests.").

¶ 26 To that end, A.R.S. § 41–1493.01 provides:

A. Free exercise of religion is a fundamental right that applies in this state even if laws, rules or other government actions are facially neutral.

B. Except as provided in subsection C, government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.

C. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:

1. In furtherance of a compelling governmental interest.

2. The least restrictive means of furthering that compelling governmental interest.

D. A person whose religious exercise is burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. A party who prevails in any action to enforce this article against a government shall recover attorney fees and costs.

E. In this section, the term substantially burden is intended solely to ensure that this article is not triggered by trivial, technical or de minimis infractions.

¶ 27 In the instant case, although the superior court properly precluded evidence supporting Defendant's free exercise of religion defense, it did so for the wrong reason. Nevertheless, "we will uphold a trial court's ruling if the court reached the correct result even though based on an incorrect reason." *State v. King*, 213 Ariz. 632, 635, ¶ 8, 146 P.3d 1274, 1277 (App.2006). Contrary to the court's ruling, such a defense is cognizable under Arizona law. As noted, pursuant to A.R.S. § 41–1493.01(D), "[a] person whose religious exercise is burdened in violation of

---

6. Defendant also asserts that his state constitutional rights have been violated. However, he does not argue that the Arizona Constitution provides greater rights than the First Amendment.

*See State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8, 24 P.3d 610, 613 (App.2001) (failing to develop due process argument on appeal waives the issue). We therefore do not address this issue.

[FERA] may assert that violation as a claim or defense [under FERA] in a judicial proceeding and obtain appropriate relief against a government." Furthermore, FERA applies "to all state and local laws and ordinances and the implementation of those laws and ordinances, whether statutory or otherwise, and whether adopted before or after the effective date" of the act. A.R.S. § 41–1493.02. Therefore, the absence of a specific provision allowing a religious freedom defense in the statutes under which Defendant was charged does not prevent him from asserting one.

¶ 28 Under FERA, the State has the "burdens of going forward with the evidence and of persuasion." A.R.S. § 41–1493. To meet these burdens, the State must demonstrate that the restriction upon a person's exercise of religion is 1) in furtherance of a compelling state interest,[7] and 2) the least restrictive means of furthering that compelling state interest. A.R.S. § 41–1493.01(C). There was no evidentiary hearing regarding either.

¶ 29 Notwithstanding, the State argues that this court should take judicial notice of marijuana's harmfulness and find, based upon case law, the existence of a compelling state interest to regulate the possession and use of marijuana. Defendant responds that we cannot take such judicial notice because case law alone fails to meet the State's burden of proving a compelling interest. We agree with the State because the leading cases in this area have followed that very approach.[8]

¶ 30 Of course, "[a]n appellate court can take judicial notice of any matter of which the trial court may take judicial notice, even if the trial court was never asked to do so." *State v. McGuire*, 124 Ariz. 64, 66, 601

P.2d 1348, 1349 (App.1978). Judicial notice of a fact can be taken if it is "notoriously true" and not subject to reasonable dispute. *Id.* Also, an appellate court can take judicial notice of legislative history, even if it was not introduced at trial. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 269, n. 5, 872 P.2d 668, 673, n. 5 (1994). Accordingly, based on our legislature's assessment, and supported by state and federal precedent, we take judicial notice of the effects and harmfulness of marijuana. *See Washington v. Balzer*, 91 Wash.App. 44, 954 P.2d 931, 938 (1998) (taking judicial notice of "marijuana's effects and harmfulness"); *United States v. Kuch*, 288 F.Supp. 439, 446, n. 8 (D.D.C.1968) (taking judicial notice of expert scientific opinion regarding the effects of marijuana).

¶ 31 The Arizona legislature expressed its concern about the effects and harmfulness of marijuana by enacting A.R.S. § 13–3405. This statute does not provide any religious exemptions nor does it contemplate an exemption for the use of marijuana that would be "consistent with public health and safety." Instead, A.R.S. § 13–3405 uniformly bans the knowing use and possession of marijuana. By imposing a total ban, the legislature has deemed that the use and possession of marijuana always pose a risk to public health and welfare.

¶ 32 Arizona courts consistently have deferred to our legislature regarding its determination that the possession and use of marijuana ought to be banned.[9] For example, in *State v. Wadsworth*, 109 Ariz. 59, 60, 505 P.2d 230, 231 (1973), the defendant asserted that classifying marijuana with narcotic drugs violated the equal protection clauses of the Arizona and United States Constitution. He presented evidence to demonstrate that the legislature's classification of marijuana with narcotic drugs rather than with danger-

---

7. "A 'compelling interest' is one that has 'clear justification ... in the necessities of national or community life' that prevents a 'clear and present, grave and immediate' danger to public health, peace, and welfare.'" *First Covenant Church of Seattle v. Seattle*, 120 Wash.2d 203, 840 P.2d 174, 187 (1992) (citations omitted).

8. The single exception is a federal case, which remanded for an evidentiary hearing to determine whether the defendants had a right to a

religious freedom defense under RFRA. *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996).

9. Although these cases use a rational basis analysis to address the constitutionality of a law banning marijuana, they nevertheless underscore the deference our courts have given to the legislature's determinations.

ous drugs was arbitrary. *Id.* at 62, 505 P.2d at 233. In rejecting the evidence, the Arizona Supreme Court held that "[t]he legislative intent in this State was to proscribe the use of marijuana, not to scientifically categorize it according to its composition and effect." *Id.* at 63, 505 P.2d at 234; *see also State v. Yanich,* 110 Ariz. 172, 174, 516 P.2d 308, 310 (1973) (deferring to legislature's classification of marijuana as an addictive drug). *Wadsworth* also took judicial notice of the fact that "marijuana is one of the most widely used drugs among our young" and concluded that controlling a widespread, objectionable practice with harsher penalties was reasonable. 109 Ariz. at 63, 505 P.2d at 234.

¶ 33 Similarly, in *State v. Murphy,* 117 Ariz. 57, 60, 570 P.2d 1070, 1073 (1977), the defendant argued that the law proscribing the possession of marijuana violated his federal constitutional rights. He proffered evidence demonstrating that marijuana was not harmful, but the court deferred to the "wisdom of the legislation [in] prohibiting the possession of marijuana" and concluded that the legislature's purpose was rationally related to public health, safety, and welfare. *Id.* at 61, 570 P.2d at 1074.

¶ 34 Moreover, other courts that have addressed free exercise of religion challenges to laws prohibiting the possession of marijuana consistently have found a compelling interest in the regulation of marijuana. For instance, in *United States v. Rush,* 738 F.2d 497, 511 (1st Cir.1984), the defendants asserted that, because the use of marijuana was an integral part of their religious practice, the district court erred in denying them an opportunity to assert a defense under the free exercise clause of the First Amendment. When confronted with the defendants' evidence that marijuana is harmless, the First Circuit stated that "[i]n enacting substantial criminal penalties for possession with intent to distribute, Congress has weighed the evidence and reached a conclusion which it is not this court's task to review *de novo.*" *Id.* at 512. The court then recognized that:

> Every federal court that has considered the matter, so far as we are aware, has accepted the congressional determination that marijuana in fact poses a real threat

to individual health and social welfare, and has upheld the criminal sanctions for possession and distribution even where such sanctions infringe on the free exercise of religion.

In light of this history, the court "decline[d] to second-guess the unanimous precedent establishing an overriding governmental interest in regulating marijuana." *Id.* at 512–13.

¶ 35 Similarly, in *United States v. Middleton,* 690 F.2d 820, 822 (11th Cir.1982), the defendants challenged laws prohibiting the importation and possession of marijuana, asserting that they violated their right to the free exercise of religion under the First Amendment. The Eleventh Circuit held that "Congress has demonstrated beyond doubt that it believes that marihuana is an evil in American society and a serious threat to its people." *Id.* at 825 (citing *Leary v. United States,* 383 F.2d 851, 861 (5th Cir.1967)(*rev'd on other grounds,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969))). Thus, "in view of the clearly articulated and compelling governmental interests in regulating the possession and distribution of drugs," the court held that the defendants' right to possess and import marijuana was not constitutionally protected. *Id.* at 825.

¶ 36 In the same vein, the Washington Court of Appeals in *Balzer* accepted an interlocutory appeal regarding whether the trial court could instruct the jury on the defendant's affirmative defense of possessing marijuana for religious purposes. 954 P.2d at 933. As here, the defendant claimed a right to a freedom of religion defense against state marijuana laws. *Id.* at 934. Also, the government's burdens there were identical to those placed upon Arizona by FERA. *Id.* at 935. The Washington court first took judicial notice of marijuana's effects and harmfulness. *Id.* at 938. It then held that "[i]n light of the substantial case law recognizing other compelling state interests in the context of religious free exercise ... and considering the 'social realities' of marijuana's effects and dangers, as recognized by the Legislature and Congress," Washington had a compelling interest in enforcing its laws regulating marijuana. *Id.* at 941.

¶ 37 Other state and federal courts have reached similar conclusions about the dangers of marijuana. *See Rupert v. Portland,* 605 A.2d 63, 66 (Me.1992) (stating that statute making possession of marijuana illegal reflects "legislature's determination that marijuana poses a threat to individual health and social welfare"); *Mood For A Day, Inc., v. Salt Lake County,* 953 F.Supp. 1252, 1262 (D.Utah 1995) ("Congress, state legislatures, courts, and other government entities have long recognized serious societal problems associated with the use and abuse of controlled substances, including marijuana."); *State v. Smith,* 93 Wash.2d 329, 610 P.2d 869, 875 (1980) (finding that marijuana use "creates a euphoric state of intoxication which impedes learning, incentive, efficiency, and, importantly, motor coordination"); *Town v. Florida,* 377 So.2d 648, 650 (Fla.1979) (stating that in Florida "cannabis remains a dangerous drug"). Thus, in light of the legislative history and legal precedent, we conclude that the State has a compelling interest in banning the possession of marijuana.[10]

¶ 38 Defendant nevertheless asserts that Arizona's Drug Medicalization, Prevention and Control Act of 1996, A.R.S. § 13–3412.01 (2001), demonstrates that the effects and harmfulness of marijuana are in dispute because it "allowed medical doctors to prescribe 116 Schedule I drugs, including heroin, marijuana and certain analogs of PCP to treat a disease or to relieve the pain and suffering of a seriously ill or terminally ill patient." *Ariz. Legis. Council v. Howe In and For Maricopa County,* 192 Ariz. 378, 381, 965 P.2d 770, 773 (1998). For medical doctors to prescribe these drugs, however, they must "document that scientific research exists that supports the use of a controlled substance." A.R.S. § 13–3412.01(B). The statute therefore does not contain specific findings regarding the safety of marijuana use that undermine the holdings of the aforementioned cases, or our holding, regarding the harmful effects of marijuana.

¶ 39 As previously noted, once a compelling governmental interest is established, the State next must demonstrate that there is no less restrictive means of furthering that compelling interest. A.R.S. § 41–1493.01(C)(2). Defendant asserts that the State must introduce specific evidence, presumably at an evidentiary hearing, showing that the law is the least restrictive means of furthering its compelling interest. Again, we disagree.

¶ 40 Defendant's categorical argument—the State must demonstrate with specific evidence—is not, as we discuss below, supported by case law. Depending on the religious practice or conduct at issue and the regulatory scheme involved, an evidentiary hearing may not be necessary for the government to show that there is no less restrictive means of furthering its compelling interest. This case illustrates this point. Here, the State was not required to put on any evidence and no evidentiary hearing was necessary to decide defendant's religious practice would render meaningless the state's marijuana ban and the legislature's determination that marijuana could not be used safely under any circumstances.

¶ 41 Without requiring the government to present evidence and based on an analysis of the religious practice at issue, federal and state courts have applied the *Yoder* and *Sherbert* test to free exercise of religion challenges to marijuana laws and have held that a uniform ban is the least restrictive means—and indeed the only means—of achieving the government's compelling interest.

¶ 42 For instance, in *Olsen v. Drug Enforcement Administration,* 878 F.2d 1458, 1459–60 (D.C.Cir.1989), the petitioner sought religious exemption from federal laws proscribing marijuana for his and his church's use of marijuana and requested approval for its limited use. Writing for the court, Judge Ruth Bader Ginsberg relied on case law in

10. In reaching this conclusion, we reject Defendant's argument that *Rush* and *Middleton* are inapplicable because they were decided prior to enactment of the RFRA. *Middleton* and *Rush* adopted the approach followed by *Yoder, Sherbert,* and their progeny, and thus we may look to them for guidance in interpreting FERA. Defendant also asserts that *Rush* is distinguishable because it involved possession of marijuana with intent to distribute instead of a mere possession offense. This difference, however, is of no consequence to our analysis.

rejecting that request, stating that "[w]e are unaware of *any* 'free exercise' precedent for compelling government accommodation of religious practices when that accommodation requires burdensome and constant official supervision and management." *Id.* at 1462 (emphasis added). The court concluded that the DEA could not "accommodate [the petitioner's] religious use of marijuana without unduly burdening or disrupting enforcement of the federal marijuana laws." *Id.* at 1463. Thus, the court held that the free exercise clause did not require even a narrow religious exemption for the use of marijuana. *Id.*

¶ 43 In *Balzer*, after finding a compelling governmental interest, the court considered whether the state had met its burden of demonstrating that a total ban of marijuana was the least restrictive means of achieving its objective. 954 P.2d at 941. Considering only the logic of the situation, the court determined that any "carving out" to accommodate the religious practices in question would effectively render the laws meaningless. *Id.* The court refused to create "a constitutional safe harbor for marijuana use because there is no realistic or sensible less restrictive means to enforce or regulate the use of marijuana." *Id.*

¶ 44 These cases and their logic demonstrate, as the State contends, that an accommodation for the "religious use" of marijuana would not be possible without "unduly interfere[ing] with fulfillment of the governmental interest" in public safety, *Lee*, 455 U.S. at 259, 102 S.Ct. 1051.

¶ 45 Moreover, the evidence at trial reflects that there are no bounds on the "religious use" of marijuana in the practice of Defendant's particular religion. Marijuana not only is the sacrament of the Church of Cognizance but also is used in the practice of this religion in all its manifestations, including as food, fuel, fiber and medicine. The Church of Cognizance appears to place no limitations on the sacramental use of marijuana for obtaining spiritual enlightenment. Testimony established that the Church is organized into individual member monasteries with no dedicated houses of worship and that each monastery is free to establish its own time of worship. In other words, the sacramental use of marijuana for religious purposes may occur at any time and at any place that the member elects.

¶ 46 In contrast to the restricted use proposed by the petitioner in *Olsen*, Defendant's religious practice does not circumscribe the use of marijuana, nor does Defendant suggest a feasible, less restrictive alternative to the general prohibition of the use and possession of marijuana that could realistically incorporate the unlimited use of marijuana—including while operating a motor vehicle—and still protect the public health and safety. *See State v. McInelly*, 146 Ariz. 161, 163, 704 P.2d 291, 293 (App.1985) (noting driver's transportation of and use of an intoxicating substance threatens public safety). If *Olsen* held that accommodating the petitioner's proposed use restrictions would overly burden the government enforcement agencies, 878 F.2d at 1463, then Defendant's proposed unrestricted use of marijuana even more clearly would interfere unduly with the State's enforcement of the marijuana laws. Under these circumstances, we hold that an accommodation of Defendant's unlimited use of marijuana would severely hinder the State's ability to enforce the law.

¶ 47 We also distinguish Defendant's asserted right to use marijuana from the exception created in *State v. Whittingham*, 19 Ariz.App. 27, 29, 504 P.2d 950, 952 (1973), for religious use of peyote by the Native American Church. There, we determined that the State had not proven that peyote was addictive or that the quantities used were "sufficiently harmful to the health and welfare of the participants so as to permit a legitimate intrusion under the State's police power." *Id.* at 30, 504 P.2d at 953. We held that peyote's use, as a part of a bona fide religious belief and "in a manner not dangerous to the public health, safety or morals," *id.* at 31, 504 P.2d at 954, was a defense to prosecution that required reversal of the convictions. *Id.* at 32, 504 P.2d at 955.

¶ 48 However, as many courts have commented, the ceremonial use of peyote by members of the Native American Church is unique because of its long and continuous history within various Indian nations. *See*

**160**

*Whitehorn v. Oklahoma,* 561 P.2d 539, 544–45 (Okla.Crim.App.1977); *People v. Woody,* 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813, 817–18 (1964). Given its limited use by a discrete and well-defined group, courts consistently have distinguished the religious use of peyote by the Native American Church from the use of drugs by members of other religions. *See, e.g., Whyte v. United States,* 471 A.2d 1018, 1021 (D.C.1984) ("[F]undamental reasons [exist] for distinguishing the unique treatment afforded the use of peyote by members of the Native American Church from that of the treatment afforded the use of marijuana by members of different religions."); *Middleton,* 690 F.2d at 826; *Kuch,* 288 F.Supp. at 449–50; *Town,* 377 So.2d at 651; *New Mexico v. Brashear,* 92 N.M. 622, 593 P.2d 63, 67–70 (Ct.App.1979); *Hawaii v. Blake,* 5 Haw.App. 411, 695 P.2d 336, 340 (1985). Accordingly, *Whittingham* ought not guide our decision here.

¶ 49 Thus, applicable case law has accepted that marijuana creates a significant risk to human health and welfare. *See Olsen,* 878 F.2d at 1463 (noting that abuse and availability of marijuana is much more pervasive than that of peyote). Moreover, unlike in *Whittingham,* as reflected in the case law discussed above a uniform ban on the possession and use of marijuana is the least restrictive means of achieving its interest. Accordingly, we hold that the historically limited religious exception for peyote cannot be used to justify a similar exception for the use of marijuana.

¶ 50 Our holding, however, does not mean that a defendant can never pursue a religious freedom defense against marijuana-type possession laws. Even in circumstances in which the case law and legislative history demonstrate the existence of a well-established compelling governmental interest and that the government has chosen the least restrictive means to achieve its interest, a defendant may successfully assert a religious freedom defense if he can present independent evidence that negates existing authority. Also, in areas in which case law and legisla-

tive history are not so well developed, the State must introduce evidence to support a restriction of a religious practice. Here, however, precedent is overwhelming, and Defendant has failed to proffer any evidence to counter that precedent establishing the dangers of marijuana.[11]

¶ 51 Accordingly, we affirm Defendant's convictions and the sentences imposed.

CONCURRING: PATRICK IRVINE, Presiding Judge, and PATRICIA K. NORRIS, Judge.

---

11. Below, Defendant cited only one proceeding in which a United States Drug Enforcement Agency administrative law judge recognized that marijuana had beneficial uses. *Alliance for Can-* *nabis Therapeutics v. U.S. Drug Enforcement Agency,* No. 86–22 (Sept. 6, 1988). We deem this one proceeding insufficient to overcome years of contrary precedent and legislative history.