SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-08-0244-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| | ) | Division One |
| v. | ) | No. 1 CA-CR 06-0966 |
| | ) | |
| | ) | Yavapai County |
| | ) | Superior Court |
| DANNY RAY HARDESTY, | ) | No. CR 820060181 |
| | ) | |
| Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Yavapai County
The Honorable Thomas B. Lindberg, Judge

**JUDGMENT AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
220 Ariz. 149, 204 P.3d 407 (App. 2008)

**VACATED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Criminal Appeals/Capital Litigation
          Joseph L. Parkhurst,                          Tucson
          Assistant Attorney General
Attorneys for State of Arizona

DERIENZO AND WILLIAMS, P.L.L.C.                    Prescott Valley
     By   Daniel J. DeRienzo
          Craig Williams
Attorneys for Danny Ray Hardesty
_____

**B E R C H**, Chief Justice

¶1        Danny Ray Hardesty seeks review of his convictions for
possession of marijuana and drug paraphernalia.  He attempted to

assert a religious use defense to the charges pursuant to Arizona Revised Statutes ("A.R.S.") § 41-1493.01 (2004), but was precluded from doing so. We hold that although religious exercise may be asserted as a defense, Hardesty's defense fails as a matter of law. We affirm the convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 On April 15, 2005, Hardesty was driving his van at night when an officer stopped him because one headlight was out. The officer smelled marijuana and recovered a baggie containing fourteen grams of marijuana from a daypack on the front floorboard of the van, less than two feet from the driver, and a marijuana joint Hardesty had just thrown out the window.

¶3 Before trial, Hardesty moved to dismiss the charges on the ground that his use of marijuana was a sacrament of his church, the Church of Cognizance. He argued that such use was protected by the free exercise clauses of the Arizona and Federal Constitutions,[1] Arizona's Free Exercise of Religion Act[2] ("FERA"), the Religious Freedom Restoration Act of 1993[3]

---

[1]  U.S. Const. amend. I; Ariz. Const. art. 2, § 12. In addition, Hardesty cited Arizona's religious tolerance provision, Ariz. Const. art. 20, ¶ 1.

[2]  A.R.S. § 41-1493.01.

[3]  Pub. L. No. 103-141, 107 Stat. 1488, *application to states invalidated by City of Boerne v. Flores*, 521 U.S. 507 (1997) (current version at 42 U.S.C. §§ 2000bb to 2000bb-4 (2006)).

("RFRA"), and the International Religious Freedom Act of 1998.[4]

¶4    At an evidentiary hearing regarding the religious use defense, Hardesty presented evidence that marijuana is the main religious sacrament of the Church of Cognizance. He referred the court to the church's website and recorded statement of religious sentiment, which inform that the church is made up of "individual orthodox member monasteries," each consisting of a family unit that establishes its own mode of worship.[5] Hardesty's mode was to smoke and eat marijuana without limit as to time or place.

¶5    While Hardesty's motion to dismiss was pending, the State moved in limine to exclude any reference to a religious freedom defense at trial. The trial court denied Hardesty's motion to dismiss and granted the State's motion in limine, finding that Hardesty's defense was "not recognized . . . under Arizona law." After a bench trial, the court convicted Hardesty of possessing marijuana and drug paraphernalia. The court of appeals affirmed, ostensibly taking judicial notice of the

---

[4]    Pub. L. No. 105-292, 112 Stat. 2787 (codified as amended in scattered sections of 22 U.S.C.).

[5]    *See* Church of Cognizance Introduced, http://coc.enlightener.net/coc/documents/pledge.pdf (last visited Aug. 31, 2009); *see also United States v. Quaintance*, 471 F. Supp. 2d 1153, 1162 (D.N.M. 2006) (relying on the testimony of the church founder and the same witness called by Hardesty for the assertion that each family unit sets its own religious practices).

harmful effects of marijuana to establish the State's compelling interest in banning the possession of marijuana. *State v. Hardesty*, 220 Ariz. 149, 151, ¶ 1, 204 P.3d 407, 409 (App. 2008).

¶6        We granted review because the religious exercise defense presents an issue of first impression and statewide importance. *See* Ariz. R. Crim. P. 31.19(c)(3); *State v. Hicks* (*Durnan*), 219 Ariz. 328, 329, ¶ 8, 198 P.3d 1200, 1201 (2009). We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution, A.R.S. § 12-120.24 (2003), and Arizona Rule of Criminal Procedure 31.19.

## II.  DISCUSSION

¶7        Although Hardesty presents his defense under provisions of the Arizona and Federal Constitutions, various federal statutes, and Arizona's Free Exercise of Religion Act ("FERA"), we need address only Hardesty's FERA defense.[6]        We

---

[6]      Hardesty challenges the enforcement of a neutral law of general applicability, foreclosing any claim under the First Amendment as incorporated against the states. *See Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 881-82 (1990). We need not address Hardesty's RFRA claim because that federal statute does not apply to the states. *See Flores*, 521 U.S. at 534-36.      Hardesty failed to provide argument on the International Religious Freedom Act of 1998 or the Arizona Constitution's religious tolerance provision. Pub. L. No. 105-292, 112 Stat. 2787 (IRFA); Ariz. Const. art. 20, ¶ 1 (religious tolerance).  Not knowing what Hardesty's claims are, we have no basis on which to review them. *Cf.* Ariz. R. Crim. P. 31.13(c)(1)(vi) (requiring that appellants' briefs contain legal contentions and supporting authorities).

review this question of statutory interpretation de novo, using the statutory language to help us ascertain and effectuate the legislature's intent. *State v. Peek*, 219 Ariz. 182, 183-84, ¶¶ 6, 11, 195 P.3d 641, 642-43 (2008). When, as here, the legislature enacts a statement of purpose, we interpret the statute in light of that purpose. *See Backus v. State*, 220 Ariz. 101, 104, ¶ 9, 203 P.3d 499, 502 (2009).

**A. FERA**

**¶8** The legislature passed FERA in 1999 to protect Arizona citizens' right to exercise their religious beliefs free from undue governmental interference. 1999 Ariz. Sess. Laws, ch. 332, § 2 (1st Reg. Sess.). FERA parallels RFRA, 42 U.S.C. §§ 2000bb to 2000bb-4, a federal act that also protects free exercise rights, but does not apply to the states. *City of Boerne v. Flores*, 521 U.S. 507, 534-36 (1997).

**¶9** The operative portion of FERA permits the government to burden the exercise of religion only if the "application of the burden to the person is both . . . [i]n furtherance of a compelling governmental interest [and] [t]he least restrictive means of furthering that compelling governmental interest." A.R.S. § 41-1493.01(C) (2004). The government's violation of this section provides a "defense in a judicial proceeding." *Id.* § 41-1493.01(D).

**B. Establishing FERA Claims**

    1.   <u>Allocation of burdens</u>

¶10      A party who raises a religious exercise claim or defense under FERA must establish three elements: (1) that an action or refusal to act is motivated by a religious belief, (2) that the religious belief is sincerely held, and (3) that the governmental action substantially burdens the exercise of religious beliefs. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 215-18 (1972) (requiring showing that a government action substantially interferes with a sincerely held religious belief, not merely a way of life or personal preference); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963) (to same effect); *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (addressing the RFRA standard based on language similar to that used in FERA); *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996), *abrogated on other grounds by Flores*, 521 U.S. at 507 (same); *Cheema v. Thompson*, 67 F.3d 883, 885 (9th Cir. 1995), *abrogated on other grounds by Flores*, 521 U.S. at 507 (same); *Goodall ex rel. Goodall v. Stafford County Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) (same). Once the claimant establishes a religious belief that is sincerely held and substantially burdened, the burden shifts to the state to demonstrate that its action furthers a "compelling governmental interest" and is "[t]he least restrictive means of furthering that compelling governmental interest." A.R.S. § 41-1493.01(C).

¶11      In this case, the State conceded all of the elements a defendant must prove to establish a religious exercise defense: that Hardesty held a sincere belief in a true religion and that the law prohibiting possession of marijuana substantially burdened his exercise of religion.  As to the State's case, Hardesty conceded during argument on the motion to dismiss that the State had a compelling interest.  Accordingly, the only remaining question is whether the State met its burden of proving that the statutory prohibition on the possession of marijuana is the least restrictive means of furthering the government's compelling interest.

## 2. Question of fact or law

¶12      Hardesty contends that, because defenses in criminal cases typically involve fact questions that are presented to and decided by a jury, his religious use defense must also be submitted to a jury.  Courts have consistently treated the compelling interest/least restrictive means test as a question of law to be determined by the court and subject to de novo review.  *See, e.g.*, *United States v. Friday*, 525 F.3d 938, 948 (10th Cir. 2008) (describing role of "constitutional facts, subject to [the court's] 'independent examination'" in First Amendment free exercise analysis, citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 499 (1984), and Henry P. Monaghan, *Constitutional Fact Review*, 85 Colum. L. Rev. 229 (1985)), *cert.*

*denied*, 129 S. Ct. 1312 (2009); *see also Hamilton v. Schriro*, 74 F.3d 1545, 1552 (8th Cir. 1996) (noting that while trial court findings of fact are subject to review under the clearly erroneous standard, the ultimate question of whether one is deprived of a free exercise right is a question of law subject to de novo review); *Eng'g Contractors Ass'n of S. Fla. v. Metro. Dade County*, 122 F.3d 895, 905 (11th Cir. 1997); *Contractors Ass'n of E. Pa. v. City of Phila.*, 91 F.3d 586, 596 (3d Cir. 1996); *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1522 (10th Cir. 1994); *In re State-Record Co.*, 917 F.2d 124, 127 (4th Cir. 1990); *Scott v. Rosenberg*, 702 F.2d 1263, 1274 (9th Cir. 1983); *Evans v. Romer*, 882 P.2d 1335, 1341 (Colo. 1994), *aff'd*, 517 U.S. 620 (1996); *Wadsworth v. State*, 911 P.2d 1165, 1170 (Mont. 1996); *State v. Melin*, 428 N.W.2d 227, 229-30 (N.D. 1988).  Hardesty has made no convincing argument that we should do otherwise and we therefore conclude, as all other courts have done, that whether the government has a compelling interest that is served by the least restrictive means is a question of law for the court to decide.

### 3.   Compelling interest claim

¶**13**      Hardesty urges that *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), required the trial court to hold an evidentiary hearing to determine whether

the State has a compelling interest and can accomplish its compelling interest by less restrictive means.[7]

¶14    Hardesty's reliance on *O Centro* is misplaced. Although the Court there observed that an exemption may be available under RFRA even though the federal Controlled Substances Act broadly prohibits possession of schedule one substances, *id.* at 433-35 (noting peyote exception), the Court did not require an evidentiary hearing in every RFRA case, *see id.* at 418.    Instead, once the government establishes a compelling interest, courts must see whether the religious use can be exempted.    *Id.* at 436 (citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005)).    That is, the government must establish that applying the law in the particular circumstances is the least restrictive means of regulating.

¶15    Hardesty next argues that we should apply the modified compelling interest test set forth in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).

---

[7]    The court of appeals disregarded *O Centro* because it interpreted RFRA, not FERA.    Because, however, RFRA is substantially identical to FERA, *compare* 42 U.S.C. § 2000bb-1(b) (2006) *with* A.R.S. § 41-1493.01(C), the United States Supreme Court's interpretation of RFRA, although technically not binding in our interpretation of FERA, provides persuasive authority, *see, e.g.*, *Ariz. State Tax Comm'n v. Kieckhefer*, 67 Ariz. 102, 107, 191 P.2d 729, 732 (1948); *see also Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940) (noting that "[t]he highest state court is the final authority on state law"); *State v. Locks*, 91 Ariz. 394, 395-96, 372 P.2d 724, 725 (1962) (observing that "the construction of state laws is the exclusive responsibility of the state courts").

We disagree. That case, which arose under the First Amendment, not RFRA, involved a statute that singled out and prohibited a disfavored religious practice of a particular religion by imposing a burden only on religiously motivated conduct. *Id.* at 545-46. On review, the Court determined that a law targeting religious conduct is the "precise evil . . . the requirement of general applicability is designed to prevent." *Id.* at 546. Such laws are subject to strict scrutiny and survive such searching review "only in rare cases." *Id.*

¶16 In contrast to the targeted law at issue in *Lukumi Babalu Aye*, laws of general applicability are judged under the First Amendment by a lesser standard. In *Yoder*, the Court acknowledged that religiously based conduct is "often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare, or the Federal Government in the exercise of its delegated powers." 406 U.S. at 220. Because *Lukumi Babalu Aye* involved a statute that targeted a religious practice, the case does not set the standard applicable to cases such as this one that involve nondiscriminatory laws of general applicability.

**C. Applying FERA**

   1. <u>Compelling state interest</u>

¶17 Hardesty conceded that the State had a compelling interest, although he did not clearly articulate which interest

- 10 -

he conceded to be compelling. This concession comports with the case law regarding marijuana, which shows that courts consistently find the government's interest in regulating marijuana to be a compelling interest. *See, e.g.*, *United States v. Israel*, 317 F.3d 768, 772 (7th Cir. 2003); *Olsen v. DEA*, 878 F.2d 1458, 1462 (D.C. Cir. 1989) (noting that "[e]very federal court that has considered the matter, so far as we are aware, has accepted the congressional determination that marijuana in fact poses a real threat to individual health and social welfare" (alteration in original) (citation omitted)).

### 2. Least restrictive means

¶18 The existence of a compelling interest is not the end of the inquiry because FERA, by its terms, allows exceptions to neutral state laws of general applicability that substantially burden the free exercise of religious beliefs, *see* A.R.S. § 41-1493.01(A)-(C), unless the government also demonstrates that the "application of the [substantial] burden to the person is . . . [t]he least restrictive means of furthering that compelling governmental interest." *Id.* § 41-1493.01(C). Hardesty argues that the law does not accomplish its goals by the least restrictive means.

¶19 Because use of the least restrictive means is determined in light of the specific interest asserted as compelling, we must ordinarily determine which government

- 11 -

interest is compelling. *See id.* (requiring the state to use "[t]he least restrictive means of furthering *that* compelling governmental interest" (emphasis added)). The State asserted at least two compelling interests: preventing the deleterious health effects associated with marijuana use and combating the danger to public safety and welfare that result from trafficking in marijuana. The State presented several cases in which courts found compelling the government's interest in regulating marijuana and combating the crimes associated with drug use and drug trafficking. *See, e.g.*, *United States v. Middleton*, 690 F.2d 820, 824-25 (11th Cir. 1982); *Randall v. Wyrick*, 441 F. Supp. 312, 315-16 (W.D. Mo. 1977); *United States v. Kuch*, 288 F. Supp. 439, 446 (D.D.C. 1968); *see also United States v. Mendenhall*, 446 U.S. 544, 561 (1980) (Powell, J., concurring in part and concurring in the judgment) (stating that "[t]he public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit"); *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) (concluding, in a free speech context, that "the State has the necessary [compelling] interest in extirpating the traffic in illegal drugs"); *Armijo v. State*, 904 P.2d 1028, 1029 (Nev. 1995) (holding "that the State has a compelling interest in protecting its children from the evils that follow both the use and trafficking of drugs"); *Commonwealth v. Martin*, 626 A.2d 556, 560 (Pa. 1993) (referring

to "a compelling state interest in eradicating illegal trafficking in drugs"); *McDorman v. State*, 757 S.W.2d 905, 907 (Tex. Ct. App. 1988) (observing that "the State has a compelling interest to suppress illicit drug traffic"); *see also* Nat'l Drug Intelligence Ctr., U.S. Dep't of Justice, National Drug Threat Assessment 2008, at v-vi, 16-17, 57-58 (2007) *available at* http://www.usdoj.gov/ndic/pubs25/25921/25921p.pdf (describing the persistent marijuana smuggling problem generally and the increase in smuggling operations in Arizona). Another obvious compelling interest is the public safety concern posed by unlimited use, particularly by those driving motor vehicles.

¶20 Against these compelling interests, Hardesty claims the broad right to use marijuana at all times, including the right to ingest while driving and, presumably, the right to drive while impaired by marijuana. The State argues that only a ban will prevent such use.

¶21 To prove that a ban on marijuana is the least restrictive means, the State must show that proposed alternatives for achieving the State's compelling interest are ineffective or impractical. *See* A.R.S. § 41-1493.01(C) (placing the burden on the state). It does not have to show that no less restrictive way to regulate is conceivable, only that none has been proposed. *Blount v. Dep't of Educ. & Cultural Servs.*, 551 A.2d 1377, 1382 (Me. 1988) ("The State need not meet the

- 13 -

impossible standard of proving that no adequate less restrictive alternative *can* be developed, only that none *has* been proposed."); *cf. Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007) (referring to the least restrictive means available rather than the least restrictive means possible); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648 (4th Cir. 1995) (same).

¶22      Hardesty claims an unlimited religious right to use marijuana when and where he chooses, and in whatever amounts he sees fit.    In the context of this case, no means less restrictive than a ban will achieve the State's conceded interests.

¶23      Although Hardesty argued to the trial court that he is entitled to assert a religious use defense identical to that afforded peyote users, there is an obvious difference between the two situations.    Members of the Native American Church assert only the religious right to use peyote in limited sacramental rites; Hardesty asserts the right to use marijuana whenever he pleases, including while driving.    He also failed to address the disparate magnitudes of the illicit use and trafficking of peyote as opposed to marijuana.    *See Olsen*, 878 F.2d at 1463 (citing report that fifteen million pounds of marijuana were seized during an eight-year period compared to only nineteen pounds of peyote).    Given Hardesty's religious

beliefs, we conclude that there is no less restrictive alternative that would serve the State's compelling public safety interests and still excuse the conduct for which Hardesty was tried and convicted.[8]

### III. CONCLUSION

¶24 Although religious exercise may provide a valid defense under A.R.S. § 41-1493.01, in the circumstances of this case, Hardesty's defense fails as a matter of law. We affirm the judgment of the trial court and vacate the opinion of the court of appeals.[9]

_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____

[8] Because Hardesty is asserting a FERA defense to criminal charges, the issue is whether a less restrictive statute or regulation would have excused the conduct for which he was convicted. For example, apart from the specific statutory exemption under A.R.S. § 13-3402(B), a member of the Native American Church charged with possession of peyote might be able to assert that a less restrictive governmental regulation than a total ban would serve the government's interest. The analysis would be different, however, if the charged criminal use occurred while the defendant was driving a school bus.

[9] Hardesty was convicted of possession of marijuana and possession of drug paraphernalia. He made no argument concerning the drug paraphernalia charge, apparently tying his conviction on that charge to his religious use defense on the possession charge. Because Hardesty's religious use defense fails, we affirm the conviction on the paraphernalia charge as well as the possession charge.

_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice


_____
Ruth V. McGregor, Justice (Retired)