# SUPREME COURT OF THE UNITED STATES

KIM DAVIS *v.* DAVID ERMOLD, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 19–926.   Decided October 5, 2020

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS, with whom JUSTICE ALITO joins, respecting the denial of certiorari.

In *Obergefell* v. *Hodges*, 576 U. S. 644 (2015), the Court read a right to same-sex marriage into the Fourteenth Amendment, even though that right is found nowhere in the text. Several Members of the Court noted that the Court's decision would threaten the religious liberty of the many Americans who believe that marriage is a sacred institution between one man and one woman. If the States had been allowed to resolve this question through legislation, they could have included accommodations for those who hold these religious beliefs. *Id.*, at 711 (ROBERTS, C. J., dissenting); *id.*, at 734 (THOMAS, J., dissenting). The Court, however, bypassed that democratic process. Worse still, though it briefly acknowledged that those with sincerely held religious objections to same-sex marriage are often "decent and honorable," *id.*, at 672, the Court went on to suggest that those beliefs espoused a bigoted worldview, *ibid.* See also *id.*, at 670 (noting that such a view of marriage is "demean[ing]" to gays and lesbians because it "teach[es] that gays and lesbians are unequal"); *id.*, at 671 (describing the view of marriage dictated by the religious beliefs of many as "impos[ing] stigma and injury"); *id.*, at 675 (characterizing the traditional view of marriage as "disrespect[ful]" to gays and lesbians). The dissenting Justices predicted that "[t]hese . . . assaults on the character of fairminded people will have an effect, in society and in court," *id.*, at 712 (opinion of ROBERTS, C. J.), allowing "governments, employers, and schools" to "vilify" those with these

religious beliefs "as bigots," *id.*, at 741 (opinion of ALITO, J.). Those predictions did not take long to become reality.

Kim Davis, a former county clerk in the Commonwealth of Kentucky, was responsible for authorizing marriage licenses. Davis is also a devout Christian. When she began her tenure as clerk, Davis' sincerely held religious beliefs— that marriage exists between one man and one woman— corresponded with the definition of marriage under Kentucky law. See Ky. Rev. Stat. §402.005 (1998); Ky. Const. §233A (2004). Within weeks of this Court granting certiorari in *Obergefell*, Davis began lobbying for amendments to Kentucky law that would protect the free exercise rights of those who had religious objections to same-sex marriage. But those efforts were cut short by this Court's decision in *Obergefell*.

As a result of this Court's alteration of the Constitution, Davis found herself faced with a choice between her religious beliefs and her job. When she chose to follow her faith, and without any statutory protection of her religious beliefs, she was sued almost immediately for violating the constitutional rights of same-sex couples.

Davis may have been one of the first victims of this Court's cavalier treatment of religion in its *Obergefell* decision, but she will not be the last. Due to *Obergefell*, those with sincerely held religious beliefs concerning marriage will find it increasingly difficult to participate in society without running afoul of *Obergefell* and its effect on other antidiscrimination laws. It would be one thing if recognition for same-sex marriage had been debated and adopted through the democratic process, with the people deciding not to provide statutory protections for religious liberty under state law.* But it is quite another when the Court

—————

*Under this Court's precedents, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or pre-

forces that choice upon society through its creation of atextual constitutional rights and its ungenerous interpretation of the Free Exercise Clause, leaving those with religious objections in the lurch.

Moreover, *Obergefell* enables courts and governments to brand religious adherents who believe that marriage is between one man and one woman as bigots, making their religious liberty concerns that much easier to dismiss. For example, relying on *Obergefell*, one member of the Sixth Circuit panel in this case described Davis' sincerely held religious beliefs as "anti-homosexual animus." 936 F. 3d 429, 438 (2019) (Bush, J., concurring in part and concurring in judgment). In other words, *Obergefell* was read to suggest that being a public official with traditional Christian values was legally tantamount to invidious discrimination toward homosexuals. This assessment flows directly from *Obergefell*'s language, which characterized such views as "disparag[ing]" homosexuals and "diminish[ing] their personhood" through "[d]ignitary wounds." 576 U. S., at 672, 678. Since *Obergefell*, parties have continually attempted to label people of good will as bigots merely for refusing to alter their religious beliefs in the wake of prevailing orthodoxy. See *Campaign for Southern Equality* v. *Bryant*, 197 F. Supp. 3d 905, 910 (SD Miss. 2016) (recognizing the plaintiffs' argument equating an accommodation allowing religious objectors to recuse themselves from signing same-sex licenses with impermissible discrimination); *Brush & Nib Studio, LC* v. *Phoenix*, 244 Ariz. 59, 66, 418 P. 3d 426, 434

---

scribes) conduct that his religion proscribes (or prescribes)." *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, 879 (1990) (internal quotation marks omitted). As a result of *Smith*, accommodations for those with sincerely held religious beliefs have generally been viewed as the domain of positive state and federal law. See, *e.g.*, *Klein* v. *Oregon Bureau of Labor & Industries*, 289 Ore. App. 507, 543–546, 410 P. 3d 1051, 1074–1076 (2017) (rejecting a Free Exercise claim under *Smith*).

(2018) (describing owners of wedding studio who declined to participate in same-sex weddings for religious reasons as treating homosexuals like "'social outcasts'" (quoting *Masterpiece Cakeshop, Ltd.* v. *Colorado Civil Rights Comm'n*, 584 U. S. ___, ___ (2018) (slip op., at 9))).

\* \* \*

This petition implicates important questions about the scope of our decision in *Obergefell*, but it does not cleanly present them. For that reason, I concur in the denial of certiorari. Nevertheless, this petition provides a stark reminder of the consequences of *Obergefell*. By choosing to privilege a novel constitutional right over the religious liberty interests explicitly protected in the First Amendment, and by doing so undemocratically, the Court has created a problem that only it can fix. Until then, *Obergefell* will continue to have "ruinous consequences for religious liberty." 576 U. S., at 734 (THOMAS, J., dissenting).